

**ORIGINAL**
FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 17 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KOHLDER MANUFACTURING CO., INC., on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>KASON INDUSTRIES, INC., PETER A. KATZ, and JOHN DOES 1-10,<br><br>            Defendants. | Case No. 1-10-CV-1875<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Kohlder Manufacturing Company, Inc. ("Plaintiff"), on behalf of itself and a class of all others similarly situated, brings this antitrust action under Section 1 of the Sherman Act (15 U.S.C. § 1), against Defendants Kason Industries, Inc. ("Kason"), and Peter A. Katz ("Katz"), and John Does 1-10 (collectively "Defendants").

## NATURE OF THE CASE

1. Plaintiff brings this lawsuit as a class action on behalf of all individuals and entities that purchased food service equipment component hardware, including walk-in refrigeration equipment, in the United States from Kason, its

predecessors, subsidiaries or co-conspirators from December 1, 2004 through at least December 31, 2008 (the "Class Period").

2. During the Class Period, Defendants conspired with their competitors to fix prices and allocate customers for food service equipment component hardware (as described below) sold in the United States. Defendants have admitted to the price-fixing, bid rigging and customer allocations alleged herein in a criminal proceeding in federal court. Because of Defendants' unlawful conduct, Plaintiff and other class members paid more for food service component hardware than they would have in the absence of Defendants' unlawful conduct.

## JURISDICTION AND VENUE

3. Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26), to recover damages and costs of suit, including reasonable attorneys' fees, as the result of Defendant's violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

4. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1337 and by Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26).

5. Venue is proper in this district pursuant 28 U.S.C. § 1391(b) and (c) and by Section 12 of the Clayton Act (15 U.S.C. § 22).

6. Defendants reside in and may be found in this District, transact business in this District and the cause of action arose, in part, within the Atlanta Division of this District. The interstate trade and commerce described herein is and has been carried out, in part, within this District.

## PARTIES

7. Plaintiff is a New Jersey corporation with its principal place of business in Camden, New Jersey. Plaintiff purchased food service component hardware directly from Kason during the Class Period. The prices Plaintiff paid for the food service equipment component hardware were, as a result of the conspiracy herein alleged, higher than they otherwise would have been, and as a result of the alleged conspiracy, Plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

8. Defendant Kason is a New York corporation with its corporate headquarters and principal place of business in Newnan, Georgia. Kason manufactured and sold food service equipment component hardware to purchasers in New Jersey and throughout the United States during the Class Period. Its products are used in commercial food service equipment, including walk-in and stand-alone refrigerators and freezers. Kason manufactures its

3

hardware in the United States and distributes throughout the United States, and in Canada, Mexico, Europe, and Asia.

9. Defendant Katz is a resident of Newnan, Georgia. During the Class Period, Katz was the President of Kason and personally participated in the acts complained of here. Katz managed Kason's business operations, including pricing decisions, and had overall responsibility for Kason's business performance in the sale of foods service component hardware, among other products. He was employed by Kason from January 24, 1964 to May 29, 2009.

10. Among defendant John Does 1-10 is a major commercial and institutional food service equipment component hardware manufacturer referred to in paragraph 4(b) of the "Plea Agreement" (May 19, 2010) in *United States v. Kason Indus., Inc.*, No. 1:10-CR-0188 (N.D. Ga.) (attached as Appendix A).

11. Among defendants John Does 1-10 are various companies and individuals, engaged in producing and selling food service equipment component hardware in the United States, not named as Defendants in this Complaint, also participated as co-conspirators in the acts complained of, and performed acts and made statements in furtherance of the unlawful conduct.

4

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons and entities that purchased food service equipment component hardware in the United States directly from Kason and its co-consporators from at least December 1, 2004 to at least December 31, 2008. Excluded from the class are Kason, its parents, subsidiaries or affiliates, as well as any co-conspirators.

13. Plaintiff does not know the exact size of the class, since such information is in the exclusive control of Defendants. However, based on the nature of the trade and commerce involved, Plaintiff believes that the class numbers in at least the hundreds and that the members of the class are geographically dispersed throughout the United States. Therefore, joinder of all members of the class would be impracticable.

14. There are questions of law or fact common to the class, including, but not limited to:

> a. whether Defendants conspired with others to fix, raise, maintain or stabilize the prices of food service component hardware sold in the United States;
>
> b. whether Defendants conspired with others to allocate markets and customers for food service component hardware sold in the United States;

5

      c. whether Defendants' conduct caused injury to the business or property of Plaintiff and the class members and, if so, the appropriate class-wide measure of damages; and

      d. whether Defendants took steps to conceal the conspiracy.

These and other questions of law and fact predominate over any questions affecting only individual members of the class.

15. Plaintiff's claims are typical of the claims of the class in that Plaintiff is a direct purchaser of food service equipment component hardware whose purchases were, in all relevant respects, typical of purchases by other class members, and the relief sought by Plaintiff is common to the class.

16. Plaintiff will fairly and adequately protect the interests of the class in that Plaintiff is a typical purchaser of food service equipment component hardware, has no conflicts with any other members of the class, and is represented by experienced and able antitrust, class action counsel. Further, the interests of Plaintiff are coincident with, and not antagonistic to, those of the class members.

17. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy described herein, because such treatment permits a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently and without unnecessary

duplication of evidence and effort. Class treatment also permits the adjudication of claims by smaller class members who could not afford to individually litigate an antitrust claim against a large corporate defendant.

## FACTS

### TRADE AND COMMERCE

18. Kason sells food service equipment component hardware. Kason's annual sales range from $50 to $100 million, arising largely from the sale of walk-in refrigeration equipment hardware. The food service equipment component hardware manufactured and/or sold by Kason is comparable to and interchangeable with food service equipment component hardware manufactured and sold by Defendant's competitors.

19. During the Class Period, Kason sold food service equipment component hardware in a continuous and uninterrupted flow of interstate commerce, to customers located in countries and states other than the countries or states in which Kason produced food service component hardware. The business activities of Kason was thus within the flow of, and substantially affected, interstate trade and commerce.

20. Food service equipment component hardware includes fabricated and other parts used in food service equipment, including hardware such as handles,

7

hinges, brackets, latches, fasteners, hydraulic and spring-loaded door closers, metal racks, drawer sliders, drawers and drawer pans used in walk-in refrigeration and in stand-alone hot and cold food service storage equipment; casters, legs, tubing, mounting plates and footings for work tables, food storage and other cafeteria and food service equipment; equipment and accessories for food preparation equipment; plumbing equipment; sliding door systems, thermometers and other accessories for walk-in refrigeration; vinyl curtains for cold and dry storage; electrical equipment used in the production of food service equipment; and other fabrication supplies used in the production of food service equipment. The annual volume of sales for walk-in refrigeration component hardware alone is estimated at up to $60 million in the United States.

21. Kason's products are purchased by original equipment manufacturers ("OEMs") and fabricators of food service and cafeteria equipment that incorporate the hardware produced by Kason into the final products they manufacture such as cooking ovens, ranges and hoods; walk-in, reach-in and display refrigeration and freezer units; ice and beverage dispensing; stand-alone hot and cold food display and storage units; food preparation equipment; and refrigerated trucks used to transport food items. OEMs purchasing food service component hardware from Defendant sell their products to commercial food

service establishments such as restaurants, bakeries, food service institutions, grocery stores and other food retail stores.

22. The market for all food service equipment is estimated at $20 billion globally, and $10 billion in United States. Food equipment hardware components sold by Kason are also purchased by distributors of food service hardware, refrigeration systems installation service providers, refrigeration repair service providers.

23. Diagram A represents the distribution system for food service equipment component hardware :

## Diagram A



24. During all or part of the Class Period, Kason and its co-conspirators produced and sold food service equipment component hardware to purchasers in the United States. These business activities substantially affected interstate trade and commerce. Moreover, the food service equipment hardware manufactured and sold by Kason is comparable to and interchangeable with the food service equipment component hardware manufactured and sold by Kason's competitors.

## VIOLATIONS ALLEGED

25. Beginning at least as early as December 1, 2004 through at least December 31, 2008, defendants entered into and participated in a combination and conspiracy to suppress and eliminate competition by fixing the prices of food service equipment component hardware sold throughout the United States. This combination and conspiracy, which consisted of a continuing agreement, understanding, and concert of action to raise, fix and maintain the prices for the sale of food service equipment component hardware sold throughout the United States and elsewhere, and to allocate customers for such hardware, was an unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

26. For the purpose of forming and carrying out their combination and conspiracy, Defendants and its co-conspirators did those things that they combined and conspired to do, including, among other things:

    a.    attending meetings, engaging in discussions by phone, facsimile and e-mail concerning the sale of food service equipment component hardware;

    b.    agreeing during those meetings and discussions to allocate customers for food service equipment component hardware by agreeing not to compete for one another's protected customers either by not submitting prices or bids to certain customers or by submitting bids for food service component hardware at intentionally high prices or bids;

    c.    exchanging prices to certain customers to ensure the conspirators would not undercut one anothers' prices for food service equipment component hardware;

    d.    quoting prices, submitting bids and selling food service equipment component hardware in accordance with the collusive and non-competitive prices under the agreements reached; and

    e.    accepting payment of sales of food service equipment component hardware at collusive and noncompetitive prices.

27. On May 6, 2010, the United States Department of Justice announced that defendants had pleaded guilty to conspiring to allocate customers for the sale of food service equipment hardware, including walk-in refrigeration equipment, in violation of the Sherman Action. As part of the agreement, the Defendants

11

have agreed to cooperate with the DOJ in its ongoing investigation. A copy of the plea agreement is attached as Appendix A.

    28. In the plea agreement with Kason and Katz, it was stated:

> During the relevant period, the defendant, through its then chief executive officer, participated in a conspiracy with a competitor engaged in the manufacture and sale of commercial and institutional food service equipment component hardware, the primary purpose of which was to suppress and eliminate competition by allocating customers for the sale of commercial and institutional food service equipment component hardware, including walk-in refrigeration equipment, in the United States and elsewhere. In furtherance of the conspiracy, the defendant, through its then chief executive officer, engaged in discussions and attended meetings with representatives of another major commercial and institutional food service equipment component hardware manufacturer. During these discussions and meetings, agreements were reached to suppress and eliminate competition by allocating customers for the sale of commercial and institutional food service equipment component hardware, including walk-in refrigeration equipment, in the United States and elsewhere.
>
> \*\*\*\*
>
> This conspiracy was formed and carried out, in part, within the Northern District of Georgia, Atlanta Division. Some of the conspiratorial meetings and discussions described above took place in Atlanta. The commercial and institutional food service equipment component hardware that was the subject of this conspiracy was sold by one or more of the conspirators to customers in this District.

29. As reflected in court documents filed in the Federal District Court for the Northern District of Georgia, Kason and Katz have admitted to entering into a combination and conspiracy to suppress and eliminate competition in the food service equipment component hardware sector. Kason and Katz carried out the unlawful price-fixing conspiracy by agreeing with one or more competitors to allocate customers for the sale of commercial and institutional food service equipment component hardware. Defendants created and exchanged protected customer lists to implement and monitor the agreement. As part of the agreement, defendants actively rigged bids submitted to customers by either not submitting bids or prices to certain customers or by submitting intentionally high prices or bids to those customers. Defendants also agreed with one or more competitors not to undercut one anothers' prices. And defendants quoted prices to customers in accordance with agreed to-prices.

30. As part of the aforementioned plea agreement, Kason and Katz accepted a criminal fine of $3.3 million. The guilty plea states: "[i]n light of the availability of civil causes of actions, which potentially provide for a recovery of a multiple of actual damages, the United States agrees that it will not seek a restitution order for the offense charged in the Information."

31. Defendants engaged in the activities described in the foregoing paragraphs in furtherance of their conspiracy and for the purpose of effectuating the unlawful contract, combination and conspiracy described herein.

## TOLLING OF STATUTE OF LIMITATIONS

32. Until May 6, 2010, neither Plaintiff nor the class members had knowledge of any of the violations alleged herein. Further, neither Plaintiff nor the class members, until recently, could have discovered, by the exercise of reasonable diligence, that defendants had engaged in the violations alleged herein since defendants actively concealed these violations to obscure their illegal activity.

33. Defendants successfully engaged in an illegal price-fixing conspiracy that, by its nature, was inherently self-concealing.

34. Defendants actively took steps to keep the unlawful conduct identified above secret from others and especially from their customers. Defendants did not inform customers, for example, that they had fixed prices, allocated customers, and rigged bids; instead, they concealed the fact of that conduct.

35. Plaintiff and the class members could not have discovered the alleged contract, combination and conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques secretly

employed by Defendants and their co-conspirator(s) to avoid detection of, and to fraudulently conceal, their contract, combination and conspiracy. Defendants concealed the contract, combination, and conspiracy herein alleged by various means and methods, including, but not limited to, secret and surreptitious communications. Moreover, defendants engaged in bid rigging and customer allocation by presenting ostensibly competitive bids that were intentionally inflated or by declining to offer bids to customers. Bid-rigging is inherently self concealing as it can only persist if the agreement is concealed.

36. The affirmative actions of the defendants herein alleged were wrongfully concealed and carried out in a manner that precluded detection.

37. By virtue of the concealment by defendant and their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims that Plaintiff and the other class members have as a result of the unlawful contract, combination and conspiracy alleged in this Complaint

## EFFECTS/DAMAGES

38. Defendants' contract, combination and conspiracy had the following effects, which have been admitted to by defendants Kason and Katz, including:

    a.    prices charged by Defendant and co-conspirators to Plaintiff and the members of the class were maintained at artificially high and non-competitive levels;

    b.    buyers of food service equipment component hardware were deprived of free and open competition in the purchase of such hardware; and

    c.    competition in the sale of food service equipment component hardware was unreasonably restrained.

39. During and throughout the Class Period, Plaintiff and members of the class purchased food service equipment component hardware from Defendant and/or its co-conspirators.

40. As a direct and proximate result of Defendant and its co-conspirators' illegal contract combination and conspiracy, Plaintiff and the members of the class were injured and financially damaged in their businesses and property in that they paid more for food service equipment component hardware than they would have in the absence of unlawful activities of Defendants and their co-conspirators. Plaintiff and other class members thus suffered overcharge damages.

## PRAYER FOR RELIEF

41. WHEREFORE, Plaintiff prays as follows:

    a.    That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

    b.    That the aforesaid contract, combination and conspiracy, and the acts done in furtherance thereof by Defendants, be adjudged to have been in violation of Section 1 of the

16

Sherman Act, 15 U.S.C. § 1, and that Plaintiff and the members of the class have been injured in their businesses and property as a result of such violations;

c. That judgment be entered for Plaintiff and the members of the class against Defendants for three-fold the amount of damages sustained by Plaintiff and the class as allowed by law, and that Defendant be enjoined from further involvement in the described alleged conduct, together with the costs of this action, including reasonable attorneys' fees; and

d. That Plaintiff and members of the class have such other, further and different relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

42. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all the issues triable of right by jury.

Dated: June 17, 2010

Respectfully submitted,

_____
W. Pitts Carr
North Parkway Square
4200 Northside Parkway
Atlanta, Georgia 30327
Tel (404) 442-9000
Fax (404) 442-9700
E-mail: pcarr@carrpalmer.com
***Local Counsel for Plaintiff Kohlder Manufacturing Company Inc.***

17

Michael Hausfeld
Megan Jones
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, D.C. 20006
Tel (202) 540-7200
Fax (202) 540-7201
E-mail: mhausfeld@hausfeldllp.com
E-mail: mjones@hausfeldllp.com

Steig Olson
HAUSFELD LLP
11 Broadway, Suite 615
New York, NY 10004
Tel (212) 830-9850
Fax (212) 480-8560
E-mail: solson@hausfeldllp.com

Michael J. Boni
Joanne Zack
Joshua D. Snyder
BONI & ZACK LLP
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Tel (610) 822-0200
Fax (610) 822-0206
E-mail: mboni@bonizack.com
E-mail: jzack@bonizack.com
E-mail: jsnyder@bonizack.com

Simon Bahne Paris
Patrick Howard
Charles Kocher
SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C.
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103

Tel (215) 575-3986
Fax (215) 575-3894
E-mail: sparis@smbb.com
E-mail: phoward@smbb.com
E-mail: ckocher@smbb.com

Michael Coran
Glenn Weiner
KLEHR HARRISON HARVEY
BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Tel (215) 569-2700
Fax (215) 568-6603
Email:  mcoran@klehr.com
Email:  gweiner@klehr.com

Marc H. Edelson
EDELSON & ASSOCIATES, LLC
45 West Court Street
Doylestown, PA 18901
Tel (215) 230-8043
Fax (215) 230-8735
Email: medelson@edelson-law.com